UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| LEE VANDIVIER,<br><br>    **Plaintiff,**<br><br>V.<br><br>CORNING INCORPORATED BENEFITS COMMITTEE and METLIFE,<br><br>    **Defendants.** | CIVIL ACTION NO. 5:23-CV-71-KKC<br><br><u>OPINION AND ORDER</u> |

\* \* \* \* \* \* \* \*

This matter is before the Court on two motions filed by plaintiff Lee Vandivier. With the first motion (DE 14), Vandivier asks the Court to enter judgment in his favor or remand this matter back to the administrator of his employer's ERISA plan, which denied his claim for permanent disability. With the second motion, Vandivier asks the Court to strike the supplement to the administrative record filed by Defendants Corning Incorporated Benefits Committee and MetLife[1] (together, "MetLife").

Vandivier worked in various position at Corning Incorporated for about 25 years, most recently as a mechanical maintenance associate. He ceased working for Corning on July 21, 2019 due to deep vein thrombosis. He continued to have vascular complications and underwent three amputation procedures on his left knee, the final of which was an above-the-knee amputation in January 2020. (DE 11-5, Admin. R. at 23.) In addition, he suffered from peripheral vascular disease, major depressive disorder, anxiety, vertigo, hypertension, Meniere's disease, familial erythrocytosis, sensorineural hearing loss (unilateral), and tinnitus. (*Id*. at 24.) He received short-term and long-term disability

---

[1] Vandivier asserted this claim against "MetLife." The defendants assert that the proper name is Metropolitan Life Insurance Company.

benefits. (DE 11-6, Admin. R. at 43.)

On October 25, 2021, he applied for Total and Permanent Disability benefits. (DE 11-5, Admin. R. at 76.) By letter dated December 20, 2021, MetLife denied his claim. (*Id.* at 22.) He appealed, and, by letter dated March 9, 2022, MetLife upheld the denial. (DE 11-3, Admin. R. at 11.) Vandivier filed a second appeal. By letter dated June 24, 2022, MetLife again upheld the denial. (DE 11, Admin. R. at 24.)

Vandivier then filed this action. Before considering Vandivier's motion for a judgment in his favor, the Court will address the motion to strike.

## I. Motion to Strike

By order dated April 12, 2023, the Court ordered counsel for the parties to file by May 12, 2023 the record that was before the plan administrator. (DE 9, Order.) The Court further ordered Vandivier to file a motion for judgment in his favor by June 12, 2023.

On May 3, 2023, MetLife's counsel e-mailed Vandivier's counsel asking if he objected to MetLife filing the administrative record under seal. The next day, Vandivier's counsel responded that he would not oppose that motion but stated that he thought Vandivier's short-term and long-term disability claim files needed to be part of the record. He asked if MetLife would be filing them with the record. MetLife's counsel responded that she did not intend to file the short-term or long-term disability claim files because "only the disability pension plan is at issue here."

Vandivier's counsel responded that he believed the short- and long-term disability claim files did need to be part of the record because the physician consultant reports in the permanent disability claim file referenced medical records contained in those files. MetLife's counsel responded that the administrative record should include only what was reviewed by the permanent disability benefit personnel. Metlife advised Vandivier's counsel

2

to file a motion to supplement the administrative record if he thought otherwise. (DE 18-1, e-mails.)

On May 11, 2023, MetLife filed the administrative record. (DE 11, Admin. R.) On June 1, 2023, Vandivier's counsel sent an e-mail to MetLife's counsel stating that it appeared that "quite a bit of medical documentation" was missing from the administrative record and that he wanted to make sure he had not missed any documents prior to filing his motion for judgment. On June 5, 2023, MetLife's counsel responded that, during the review of Vandivier's permanent disability claim, the physician consultant had reviewed records that were located in Vandivier's long-term disability claim file, but those documents had never been placed in the permanent disability claim file. MetLife's counsel stated that it would supplement the administrative record with Vandivier's short-term and long-term disability claim files. (DE 15-1, e-mail.)

On June 9, 2023, Vandivier filed the motion for judgment in his favor. MetLife had not yet supplemented the administrative record. In his motion for judgment, Vandivier makes two arguments. First, he argues the merits – asserting he is entitled to a judgment in his favor awarding him permanent disability benefits. Second, and alternatively, he argues that this case should be remanded to the plan administrator because the administrative record is not complete. For this second argument, Vandivier states that MetLife's decision to deny his claim was based on reports written by Dr. Roger Belcourt and Dr. Marvin Pietruszka, who, in turn, relied on multiple medical records that are not in the Administrative Record filed by MetLife and, thus, not available for the Court's review.[2]

---

[2] The Court notes that Vandivier does not assert that MetLife failed to review the documents when it reviewed Vandivier's claim for permanent disability. He asserts only that this Court should be able to review the documents. This Court is limited in its review to the record that was before the Plan Administrator. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). Thus, in arguing that this Court should be able to review the records referenced by the consultants, Vandivier

3

Hours after Vandivier filed his motion for judgment, MetLife filed a "Notice" stating that it was supplementing the administrative record in this case. (DE 15, Notice.) In the notice, MetLife stated that it had "recently learned" that Vandivier's permanent disability claim file referenced medical records that were contained in his long-term disability claim file. MetLife stated it was supplementing the administrative record with the long-term disability claim file and "related documents for Plaintiff's prior short-term disability and long-term disability claims." MetLife stated it had already provided the documents to Vandivier during the administrative process and that it had advised Vandivier's counsel that it would move to supplement the record. (DE 15, Notice.)

On July 10, 2023, MetLife filed a response to Vandivier's motion for judgment in his favor. In its response to Vandivier's argument that the Court should remand this matter because the administrative record is not complete, MetLife stated the matter was now moot because it had filed the supplement. It again stated that all the records contained in the supplement had been provided to Vandivier during the administrative process.

On July 25, 2023, Vandivier filed the motion to strike the supplement. He no longer argues that the administrative record is incomplete, but he argues that he was prejudiced by the supplemental filing because it was filed the Friday before the Monday that his motion for judgment was due.

The Court will deny the motion to strike. First, Vandivier has not demonstrated any prejudice by the filing. He concedes that his counsel had the short-term and long-term disability claim files before he even filed this action. (DE 19, Reply at 7.) Second, Vandivier could have moved to supplement the record himself with the short-term and long-term

---

indicates that the documents were before MetLife when it reviewed his claim.

disability claim fails. Vandivier had the files, and the Court ordered the "parties" to file the administrative record, not just MetLife. If Vandivier intended to rely on documents in the short-term and long-term disability claim files, he could have filed a motion to supplement the record back in May 2023 when he first learned that MetLife did not intend to file those documents in the administrative record. Likewise, he could have moved to supplement the record when MetLife filed the administrative record without the short-term and long-term disability claims files.

## II. Motion for Judgment

The parties agree that MetLife's decision must be upheld unless it is "arbitrary and capricious." (DE 13, Joint Report.) This means the Court must uphold decision if it "resulted from a deliberate, principled reasoning process and was supported by substantial evidence." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 607 (6th Cir. 2016) (quotations and citation omitted). While this standard is not a "demanding form of judicial review of administrative action, neither is it to be a 'rubber stamp' of the determination of the administrator." *Id.* (quotations and citation omitted).

In its denial, MetLife set forth the definition of "Totally and Permanently Disabled" under the plan, explaining that the plan provides:

> [A] participant shall be deemed to be totally and permanently disabled when on the basis of medical evidence satisfactory to the Benefits Committee he is found to be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long, continued, and indefinite duration.

MetLife explained that Vandivier's claim file was referred to two "Independent Physician Consultants." One consultant was board certified in occupational medicine and

5

the other was board certified in psychiatry. (DE 11, Adm. R. at 25.) The letter states that the occupational medicine consultant concluded that Vandivier could work full time with certain limitations. The letter also explained that the psychiatry consultant determined that Vandivier did not suffer from a mental health condition that would warrant any restrictions on his work activities. (DE 11, Admin. R. at 26.) Thus, MetLife determined that the medical documentation failed to support that Vandivier required such restrictions or limitations on his work activities that he was prevented from engaging in any "substantial gainful activity" as required under the plan for a finding of total and permanent disability. (*Id.*)

In his motion for judgment, Vandivier does not argue that any mental health condition renders him totally and permanently disabled under the plan. Thus, the Court will focus on the report of the specialist in occupational medicine. The letter does not identify the specialist by name, but the parties agree that the letter refers to the report by Dr. Marvin Pietruszka dated May 20, 2022. (DE 11, Admin. R. at 55-64.)

In his motion, Vandivier makes two arguments for why the Court should reverse MetLife's decision. First, he argues that the restrictions that Dr. Pietruszka placed on his ability to work render him unable to perform even sedentary work, which is the Social Security Administration's category for jobs requiring the least amount of physical exertion. Dr. Pietruszka determined that Vandivier could never balance, bend, twist, stoop, kneel, crouch, or crawl and that he could carry no more than five pounds and that he could stand and walk for only up to one hour per day. The Social Security Administration defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is

> defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Vandivier points out that Dr. Pietruszka limited him to lifting no more than five pounds, while sedentary work can involve lifting up to 10 pounds under the Social Security Administration's definition. Vandivier also points to notes in his MetLife Activity Log indicating that a vocational rehabilitation counselor determined that sedentary work requires occasionally lifting up to 10 pounds. (DE 16-1, Supp. Admin. R. at 331.)

The Sixth Circuit recently indicated that, when the plan does not define "sedentary work," the Court may look to the Social Security Administration's definition of the term. *Laake v. Benefits Comm., W. & S. Fin. Grp. Co. Flexible Benefits Plan*, 68 F.4th 984, 998–99 (6th Cir. 2023) (citing *Evans v. Metro. Life Ins. Co.*, 190 F. App'x 429, 436 n.7 (6th Cir. 2006)). Here, neither party has pointed to a definition of the term, "sedentary work," under the plan and the Court has not located any such definition in the plan. Nor has MetLife offered any other definition of the term. Thus, in the absence of any "competing definition," *id.* at 999, the Court will consider the Social Security Administration's definition.

But, even if Vandivier is unable to perform all the components of sedentary work, this does not necessarily mean he is totally disabled under the plan. The Social Security Administration itself recognizes that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" SSR 96-9P, 1996 WL 374185 (S.S.A. July 2, 1996). Social Security Ruling 96-9p provides:

> If the performance of past relevant work is precluded by [a residual functional capacity] for less than the full range of

7

> sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.

*Id.*

Thus, the fact that Vandivier can do less than a full range of sedentary work as defined by the Social Security Administration does not necessarily render him totally and permanently disabled under this ERISA plan.

As to what kind of work is available for someone with Vandivier's restrictions, that leads to Vandivier's second argument for why the Court should not uphold MetLife's denial. Vandivier argues that MetLife was required to hire a vocational expert to opine as to whether someone with Vandivier's restrictions could, in fact, engage in "substantial gainful activity." The Court understands this argument, but the Sixth Circuit has held that an ERISA plan administrator is not required to consult a vocational expert "where the medical evidence contained in the record provides substantial support for a finding that the claimant is not totally and permanently disabled." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 662-63 (6th Cir. 2013).

The objective medical evidence indicates that Vandivier can sit a whole day and stand and walk for up to one hour per day. He can climb stairs, and he can lift, carry, push, and pull up to five pounds. MetLife points out that Dr. Pietruszka opined that Vandivier's "abilities were sustainable on a full-time basis . . . ." (DE 11, Admin. R. at 25, 26, 64.) This finding is comparable to the medical opinions in *Judge* that the plaintiff "could work for eight hours per day." *Judge*, 710 F.3d at 660. The court found these opinions were sufficient medical evidence of disability to render unnecessary vocational expert testimony as to whether jobs actually existed that the plaintiff could do given his limited abilities. *Id.* at 663. Thus, Dr. Pietruszka's report is sufficient objective medical evidence that Vandivier's

8

physical limitations do not create "such a broad impairment as to preclude [him] from engaging in other suitable occupations." *Id*.

Further, even if the Court were to find that a vocational expert's opinion would be necessary here, Vandivier has presented no evidence that he was prevented from presenting a vocational expert himself during the administrative process. *Id*. at 662.

In his reply brief, Vandivier asserts that he produced evidence that would support a finding that he is totally and permanently disabled. He cites the August 26, 2021 report of his treating medical provider APRN Summer Blair and the October 21, 2021 medical notes of Dr. Paula Diane Ackerman. As to APRN Blair, she opined that Vandivier could not stand or walk at all during an eight-hour workday and could not lift or carry anything. (DE 16-2, Supp. Admin. R. at 49.) However, even assuming that these restrictions would render Vandivier totally and permanently disabled under the plan, Dr. Pietruszka's May 20, 2022 report is more recent and considered medical evidence through April 17, 2022. (DE 11, Admin. R. at 61.)

As to Dr. Paula Diane Ackerman, Vandivier cites medical notes dated October 21, 2021. However, in the notes cited, Dr. Ackerman does not express any opinion on Vandivier's ability to perform work functions. She merely states that Vandivier could be at an increased risk of fall while sitting and describes attempts at minimizing that risk. (DE 11-5, Admin. R. at 53.)

Moreover, in its June 24, 2022, letter, MetLife explained that it sent copies of the Dr. Pietruszka's report to his treating medical providers, including APRN Blair and Dr. Ackerman. MetLife requested comments and instructed the providers that, if they did not agree with Dr. Pietruszka's report, then they should submit clinical evidence in support of their conclusions. MetLife advised Vandivier of this process. However, none of the treating

9

providers submitted any additional evidence or otherwise indicated that they disagreed with Dr. Pietruszka's report. (DE 11, Admin. R. at 26.)

For all these reasons, the Court finds that MetLife's decision resulted from a deliberate, principled reasoning process and was supported by substantial evidence.

### III. Conclusion

Accordingly, the Court thereby ORDERS as follows:

1) Vandivier's motion for judgment (DE 14) is DENIED; and

2) Vandivier's motion to strike the supplemental record (DE 18) is DENIED.

This 20th day of March, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY